T.C. Memo. 1998-66


UNITED STATES TAX COURT


MAHENDRA K. TANDON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13628-96.          Filed February 18, 1998.


Mahendra K. Tandon, pro se.

Carol A. Szczepanik, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes:

| | | Additions to Tax | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653 (b)(1)(A) | Sec. 6653 (b)(1)(B) | Sec. 6653 (b)(1) | Sec. 6653 (b)(2) | Sec. 6661(a) | Sec. 6653 (a)(1)(A) | Sec. 6653 (a)(1) | Sec. 6653 (a)(1)(B) |
| 1985 | $19,969 | --- | --- | $17,334 | [1] | $4,992 | --- | --- | --- |
| 1986 | 45,045 | $34,567 | [2] | --- | --- | 11,261 | $346 | --- | [3] |
| 1987 | 13,068 | 9,474 | [4] | --- | --- | 6,997 | 768 | --- | [5] |
| 1988 | 19,914 | --- | --- | 20,425 | --- | 4,979 | --- | $9 | --- |

[1] 50 percent of the statutory interest on $11,062.
[2] 50 percent of the statutory interest on $38,125.
[3] 50 percent of the statutory interest on $20,434.
[4] 50 percent of the statutory interest on $12,632.
[5] 50 percent of the statutory interest on $16,508.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues for decision are:

(1) Whether petitioner underreported income from his medical practice for 1985, 1986, 1987, and 1988 in the amounts of $22,540.91, $79,792.16, $30,463.14, and $62,532.00, respectively;

(2) whether petitioner underreported rental income for 1985, 1986, 1987, and 1988 in the amounts of $1,763, $4,195, $3,960, and $3,125, respectively;

(3) whether petitioner is entitled to deductions for depreciation; wage, lease, and car and truck expenses; and business and mortgage interest in amounts greater than those respondent allowed in the statutory notice of deficiency;

(4) whether petitioner is entitled to a deduction for general sales tax on motor vehicles in 1986;

(5) whether petitioner is entitled to deductions for partnership losses in 1985, 1986, and 1987;

(6) whether petitioner is entitled to an investment tax credit in 1985;

---

[1] Petitioner concedes that he was not entitled to a dependency exemption for Guru Prasad Tandon which he took on his 1985 tax return.

(7) whether petitioner is entitled to a dependency exemption for Anupam Tandon (Anupam) in 1986;

(8) whether petitioner is liable for additional self-employment tax in 1986 and 1987;

(9) whether petitioner is liable for the additions to tax for fraud for 1985, 1986, 1987, and 1988 to the extent there is any unreported medical practice and/or rental income;

(10) whether petitioner is liable for the additions to tax for negligence for 1986, 1987, and 1988; and

(11) whether petitioner is liable for the additions to tax for a substantial understatement for 1985, 1986, 1987, and 1988.

Finally, if we decide that petitioner did not fraudulently fail to report income in 1985, 1986, 1987, and 1988, we must decide whether the periods of limitations for assessing taxes for these years have expired.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Mayfield Heights, Ohio, at the time he filed his petition. Petitioner prepared his own tax returns for the years in issue.[2]

Petitioner has three children--Manoj, Harsh, and Parag. During the years in issue, Manoj was a teenager. Guru Prasad

---

[2] Unless otherwise indicated, all descriptions refer to the 1985, 1986, 1987, and 1988 tax years.

Tandon was petitioner's father.  He died in 1987.  Petitioner has a sister named Indira Khana (Ms. Khana).

## Petitioner's Medical Practice

Petitioner was a medical doctor and conducted his medical practice out of a clinic located at 4620 St. Clair Avenue, Cleveland, Ohio (St. Clair property).  Petitioner's medical practice primarily consisted of workers' compensation examinations, the treatment of industrial accidents and personal injuries, and consulting with attorneys on medical malpractice cases.  During 1985, 1986, and 1987, petitioner operated his medical practice as a sole proprietorship called St. Clair Medical Center.[3]  Petitioner used the cash basis method of accounting to report his medical receipts on Schedule C of his tax returns.  From October of 1985 through February of 1990, Angela Paolella Alshabani (Ms. Alshabani) was petitioner's secretary.

In 1988, Ms. Khana incorporated petitioner's medical practice under the name Superior Industrial Medical Center, Inc. (Superior).[4]  Ms. Khana never received any money from Superior.

---

[3]  Petitioner used the names St. Clair Medical Center and St. Clair Industrial Hospital (St. Clair IH) interchangeably.

[4]  During 1988, Superior conducted business under the name of St. Clair Industrial Medical Center (St. Clair IMC).

During 1988, petitioner handled the banking and supervised the clerical staff of Superior. Petitioner or his employees made all bank deposits of receipts for Superior. Petitioner prepared the 1988 Federal corporate tax return for Superior. Petitioner reported $50,000 in income from Superior on his 1988 tax return.

During the years in issue, petitioner maintained the following bank accounts in the names of the following persons or entities:

| Account | Name(s) on Account |
|---|---|
| AmeriTrust #10045-1693 (AT #1 account) | St. Clair IH |
| AmeriTrust #90344-4278 (AT #9 account) | Petitioner and St. Clair IH |
| AmeriTrust #30345-2842 (AT #3 account) | St. Clair IH, c/o petitioner[1] |
| First Federal Savings #250208704 | Superior, d.b.a. St. Clair IMC |
| Society National Bank #447-8346 | Petitioner[2] |
| AmeriTrust #48070-9845 (AT #4 account) | Petitioner |
| Huntington Bank #466-478048-7 | Manoj Tandon |
| Independent Savings Bank #03-0-002248 | Manoj Tandon[3] |

[1] In or about Oct. of 1988, the account holder name on the AT #3 account changed from St. Clair IH to St. Clair IMC.
[2] On July 18, 1985, petitioner added his father as additional depositor to the Society National Bank account.
[3] Petitioner had a power of attorney to make withdrawals out of this account.

Petitioner deposited receipts from his medical practice into the above listed bank accounts as follows:

| Account | 1985 | 1986 | 1987 | 1988 |
|---|---|---|---|---|
| AT #1 | $4,070.00 | --- | --- | --- |
| AT #9 | 2,051.85 | $16,864.13 | --- | --- |
| AT #3 | 147,704.48 | 132,635.25 | $153,407.41 | $30,496.15 |
| First Federal Savings | --- | --- | 2,319.44 | --- |
| Society National Bank | 19,270.00 | 55,040.92 | 56,403.28 | 13,390.89 |
| AT #4 | --- | --- | 2,087.00 | --- |
| Huntington Bank | --- | --- | --- | 1,048.36 |
| Independent Savings Bank | --- | --- | --- | 67,596.16 |
| Total | 173,096.33 | 204,540.30 | 214,217.13 | 112,531.56 |

On May 9, 1985, petitioner wrote a check to cash in the amount of $24,000 from the AT #3 account. Petitioner paid attorney fees for his divorce proceedings from the AT #3 account. During 1987, petitioner paid his son Manoj's tuition to Ohio

State University from the AT #3 account.  Petitioner paid his alimony and child support obligations from the AT #3 account and the First Federal Savings account.  Petitioner used the Independent Savings Bank account to pay his personal expenses.

Rental Property and Income

In addition to the space in the St. Clair property where petitioner conducted his medical practice, the St. Clair property had two residences and garages available to rent (the rental property).  During the years in issue, petitioner rented parts of the rental property to Robert McMillan, Jeanine Sinclair, James L. (Leon) and Sharyn Hamm, Ellis Vest, and his secretary Ms. Alshabani (the renters).  The renters paid the following rental payments to petitioner:

| Renter | 1985 | 1986 | 1987 | 1988 |
|--------|------|------|------|------|
| Martin McMillan | $750 | $1,050 | $1,350 | $1,350 |
| Jeanine Sinclair | 300 | 300 | 300 | 200 |
| Leon Hamm | 313 | 1,920 | 1,710 | 225 |
| Ellis Vest | 25 | --- | --- | --- |
| Total | 1,388 | 3,270 | 3,360 | 1,775 |

The Audit and Criminal Investigation

Prior to September of 1988, the Internal Revenue Service (IRS) began examining petitioner's 1984, 1985, and 1986 tax returns.  In October or November of 1988, Revenue Agent Maureen Lippert (Ms. Lippert) took over petitioner's examination.  On March 1, 1989, Ms. Lippert informed petitioner's attorney that she had expanded the examination to include petitioner's 1987 tax

year.  On or about March 9, 1989, petitioner filed an amended return for 1987 reporting an additional $56,000 of income.  On or about May 12, 1989, after Guru Prasad Tandon (petitioner's father) had died, Forms 1040EZ (the Forms 1040EZ) were filed for 1985, 1986, and 1987 in the name of Guru Prasad Tandon to report the rental income from the rental property.

Petitioner told Ms. Lippert that he deposited all of his medical practice receipts into one checking account at AmeriTrust and that he lost all of his records for 1985 in a flood.

In late 1989, the Examination Division referred petitioner's case to the Criminal Investigation Division.  In November of 1989, Special Agent Daniel Dever (Mr. Dever) began a criminal investigation of petitioner.  Shortly thereafter, an amended 1988 corporate tax return for Superior, reporting additional income, was filed.  Petitioner told Mr. Dever that he reported all items deposited into his bank accounts on his tax returns.  Petitioner later admitted to Mr. Dever that he did not report some medical service income from AARP and the Ohio Industrial Commission and Bureau of Workers' Compensation on his tax returns.

Mr. Dever served summonses on various banks for signature cards, bank statements, deposit tickets, support items for the deposit tickets, and canceled checks.  Mr. Dever contacted all third-party payors regarding checks deposited into the summonsed bank accounts and confirmed whether their checks were paid to petitioner for medical services rendered.  Mr. Dever prepared a

computerized deposit analysis listing all of the third-party payors who paid petitioner for medical services, the amounts paid, and the bank account the payment was deposited into. Mr. Dever subtracted out of his deposit analysis amounts that were not for medical services. Mr. Dever determined that the amount of petitioner's medical practice income deposited into the various bank accounts was greater than the amount reported on petitioner's 1985, 1986, 1987, and 1988 individual and Superior's 1988 corporate tax returns.

Petitioner's Criminal Tax Convictions

In United States v. Tandon, 111 F.3d 482 (6th Cir. 1997), the U.S. Court of Appeals for the Sixth Circuit affirmed petitioner's conviction for wilfully filing false individual income tax returns for 1986, 1987, and 1988 in violation of section 7206(1) and for wilfully assisting in the preparation and presentation of a false corporate income tax return for Superior for 1988 in violation of section 7206(2).

OPINION

Unreported Income

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or her gross income. Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable

income by any method that clearly reflects income.  Sec. 446(b);
Holland v. United States, 348 U.S. 121 (1954); Webb v.
Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), affg. T.C.
Memo. 1966-81.  The reconstruction of income need only be
reasonable in light of all surrounding facts and circumstances.
Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).  The
Commissioner is given latitude in determining which method of
reconstruction to apply when a taxpayer fails to maintain
records.  Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989).

For the years in question, we find that petitioner
maintained inadequate books and records.[5]  Respondent employed
the bank deposits method of proof to reconstruct petitioner's
gross receipts from his medical practice.  This method of proof
is well established.  DiLeo v. Commissioner, supra at 867; Estate
of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d
2 (6th Cir. 1977).  Bank deposits are prima facie evidence of
income.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate
of Mason v. Commissioner, supra at 656-657.  When using the bank
deposits method, the Commissioner is not required to show that
each deposit or part thereof constitutes income, Gemma v.
Commissioner, 46 T.C. 821, 833 (1966), or prove a likely source,
Clayton v. Commissioner, 102 T.C. 632, 645 (1994); Estate of
Mason v. Commissioner, supra at 657.  Respondent's determination

---

[5]  The scanty evidence petitioner submitted as records
lacked indicia of reliability.  See infra.

is presumed to be correct, and petitioner bears the burden of proving otherwise.  Rule 142(a).

Petitioner argues that there is no unreported income. Petitioner, however, offers conclusions without argument or evidence to support them.  Additionally, on brief, petitioner concedes that he underreported his medical practice income by $17,170.91 in 1985 and $44,401.56 in 1986.  Petitioner's testimony was at times questionable, vague, conclusory, not credible, and was unsupported by the evidence in the record. Under these circumstances, we are not required to, and do not, rely on petitioner's testimony to sustain his burden of establishing error in respondent's determinations.  See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Tokarski v. Commissioner, supra at 77.

A.   Medical Practice Income

Respondent determined that petitioner had unreported income in 1985, 1986, and 1987 from petitioner's medical practice as follows:

| Year | Total Income | Reported Income | Adjustment[1] | Unreported Income |
|------|-------------|-----------------|---------------|-------------------|
| 1985 | $173,096.33 | $148,947.76 | ($1,607.66) | $22,540.91 |
| 1986 | 204,540.30 | 151,375.44 | 26,627.30 | 79,792.16 |
| 1987 | 214,217.13 | 157,126.69 | (26,627.30) | 30,463.14 |

[1]  Respondent made the above listed adjustments to reconcile the deposits to the year of receipt.

Petitioner has failed to show that respondent's determination is incorrect; therefore, we sustain respondent's determination.

Petitioner's medical practice was incorporated as Superior in 1988. Petitioner deposited the medical practice's receipts into various bank accounts. Respondent argues that petitioner had dominion and control over these accounts; petitioner argues that he did not.

Unless the nontaxable nature of deposits is established, gross income includes deposits to bank accounts where the taxpayer has dominion and control of the funds. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Davis v. United States, 226 F.2d 331, 334-335 (6th Cir. 1955); see also Manzoli v. Commissioner, T.C. Memo. 1988-299, affd. 904 F.2d 101 (1st Cir. 1990). The use of money for personal purposes is an indication of dominion and control. Woods v. Commissioner, T.C. Memo. 1989-611, affd. without published opinion 929 F.2d 702 (6th Cir. 1991).

Petitioner's argument is unsupported by the evidence. His sister, Ms. Khana, Superior's incorporator, testified that petitioner controlled Superior and that she did not receive a single penny from the corporation. Petitioner used the AT #3 account and the Independent Savings Bank account to pay for his personal expenses. Petitioner also had a power of attorney to make withdrawals out of the Independent Savings Bank account. Furthermore, the Society National Bank account was in petitioner's name. Even though petitioner's medical practice was incorporated in 1988, petitioner continued to deposit medical

receipts into the AT #3 account, the Society National Bank account, the Huntington Bank account, and the Independent Savings Bank account. These deposits totaled $112,531.56. We conclude that deposits into these accounts constitute income to petitioner in 1988. After reducing the deposits by the $50,000 petitioner reported on his tax return, petitioner had $62,531.56 in unreported income from medical services in 1988.

B. Rental Income

Respondent contends that petitioner received rental income in the amounts of $1,763, $4,195, $3,960, and $3,125 in 1985, 1986, 1987, and 1988, respectively. Petitioner contends that he received rental payments as an agent.

Section 61(a)(5) includes in gross income all income from the rental of property. Ms. Alshabani testified that she rented property from petitioner and made rental payments to him. Other renters made their checks payable to petitioner. Petitioner endorsed these checks.

Petitioner presented no evidence that he paid over any of the money he received as rent to the "principals" for whom he was supposedly acting as an agent. Furthermore, it was not until May of 1989, well after the IRS began investigating petitioner and petitioner's father had died, that tax returns were filed reporting that the rental income belonged to petitioner's father.

Although Ms. Alshabani testified that she rented property from petitioner and paid him rent, there is no evidence of the

amount of rent she paid to petitioner. Additionally, the rent checks and receipts for rental payments to petitioner in the record total less than the amount respondent asserts petitioner received as rent. After reviewing the evidence and testimony, we conclude that petitioner had unreported rental income in the amounts of $1,388, $3,270, $3,360, and $1,775 in 1985, 1986, 1987, and 1988, respectively.

The Deductions

Deductions are a matter of legislative grace, and the taxpayer has the burden of showing that such taxpayer is entitled to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers must substantiate amounts claimed as deductions, credits, etc., by maintaining the records necessary to establish such entitlement. Sec. 6001; sec. 1.6001-1(a) Income Tax Regs.; see Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

A. Depreciation

On his 1985, 1986, and 1987 tax returns, petitioner claimed a depreciation deduction of $1,138.50 for a 1985 Chrysler Laser (the Chrysler). On his 1986 and 1987 tax returns, petitioner claimed depreciation deductions of $15,600 and $22,800, respectively, for a 1986 Rolls Royce Silver Spirit (the Rolls Royce). On his 1985 tax return, petitioner claimed Schedule E depreciation expenses of $2,713.15 for an oil well and a

computer. Respondent allowed petitioner $1,543.50 of depreciation in 1985, 1986, and 1987. Petitioner argues that he used the Chrysler and the Rolls Royce in his trade or business. Respondent counters that petitioner has not shown that he used this property in a trade or business or held it for the production of income.

Section 167(a) allows a depreciation deduction for the exhaustion, wear and tear of property used in a trade or business or property held for the production of income. Petitioner submitted mileage logs which are supposed to represent a record of business mileage for the Chrysler and on a 1984 Cadillac. None of the miles in the log are identified as belonging to the Rolls Royce. Petitioner did not testify, and presented no evidence, regarding the business use of the Rolls Royce.

These logs are suspect as they do not appear to be prepared contemporaneously with the occurrence of the supposed business travel. See sec. 1.274-5(c), Income Tax Regs. The car the miles supposedly relate to is often not identified. Petitioner presented no evidence or testimony on how the mileage documented in these logs related to his medical practice.[6] Furthermore, petitioner told Ms. Lippert that he lost all of his 1985 records in a flood, but submitted mileage logs for 1985. Petitioner

---

[6] For example, there are entries for miles driven to a tax attorney, to "houghnorwood", to a library, to a marina, to the Tax Court in Wash., D.C., to K-Mart, and on a trip to Columbus.

appears to have fabricated the logs in order to substantiate his claimed deductions.

The evidence does not show that petitioner used the depreciated property in a trade or business or held it for the production of income; furthermore, petitioner presented no evidence regarding the Schedule E depreciation expenses. We therefore sustain respondent's determination on this issue.

B.   Wage, Leasing, and Car and Truck Expenses

Section 162 allows a deduction for all of the ordinary and necessary expenses paid or incurred in carrying on a trade or business. Respondent did not allow petitioner deductions for leasing expenses in 1985, 1986, and 1987 or car and truck expenses in 1985 and 1986.


1.   Wage Expenses

Petitioner claimed wage expenses in the amounts of $14,401, $13,869.04, and $15,998 in 1985, 1986, and 1987, respectively. Respondent allowed petitioner wage expenses in the amounts of $11,325, $10,800.04, and $12,000 in 1985, 1986, and 1987, respectively. Respondent argues that petitioner has failed to substantiate deductions in amounts greater than those allowed; petitioner claims that he has substantiated his claimed deductions.

Petitioner did not testify regarding whom he employed in his medical practice. Ms. Alshabani testified that she was employed

by petitioner during the years in issue.  At trial, petitioner submitted Forms W-2 showing the following:

| Year | Name | Wages, Tips, Other Compensation |
|------|------|---------------------------------|
| 1985 | Ms. Alshabani | $2,405.00 |
|      | Pam Biedenback | 2,450.00 |
| 1986 | Ms. Alshabani | 11,401.00 |
|      | Manoj Tandon | 2,456.04 |
| 1987 | Ms. Alshabani | 13,398.00 |
|      | Manoj Tandon | Illegible |

Petitioner submitted checks he wrote to Ms. Alshabani, Pam Biedenback, and Manoj Tandon which totaled the following:

| Year | Name | Total |
|------|------|-------|
| 1985 | Ms. Alshabani | $2,095.00 |
|      | Pam Biedenback | 2,080.00 |
| 1986 | Ms. Alshabani | 9,073.00 |
|      | Manoj Tandon | 0.00 |
| 1987 | Ms. Alshabani | 10,875.54 |
|      | Manoj Tandon | 0.00 |

The checks do not support the amounts the Forms W-2 list as paid by petitioner as wages.  Furthermore, there is no evidence suggesting in what capacity Pam Biedenback worked for petitioner, and petitioner did not even testify that he employed her.  We find that petitioner has substantiated that he paid Ms. Alshabani wages in the amounts of $2,095, $9,073, and $10,875.54 in 1985, 1986, and 1987, respectively.  Petitioner has not shown that he is entitled to wage expense deductions in amounts greater than those allowed by respondent; therefore, we sustain respondent's determination on this issue.

2.  Leasing Expenses

Petitioner claimed leasing expenses in the amounts of $4,474.37, $8,123.40, and $12,853.67 in 1985, 1986, and 1987, respectively, for the 1984 Cadillac and the Rolls Royce. Respondent disallowed these deductions.

The leasing expenses relate to the 1984 Cadillac and the Rolls Royce. Petitioner's sister testified that the Rolls Royce had very low mileage and was usually in the garage. Petitioner did not testify, and presented no evidence, regarding the business use of the Rolls Royce. The mileage logs petitioner submitted supposedly relate to the business use of the 1984 Cadillac; however, as we stated earlier, we do not rely on those logs. Petitioner has not established that he used the 1984 Cadillac or the Rolls Royce in his business; therefore, we conclude that petitioner is not entitled to deductions for leasing expenses in 1985, 1986, or 1987.[7]

### 3. Car and Truck Expenses

On his 1985 and 1986 tax returns, petitioner claimed car and truck expenses of $1,642.34 and $1,279, respectively. Respondent disallowed these deductions.

Petitioner testified that the car and truck expense deductions he claimed were for his annual expenses for gasoline. There is, however, no evidence in the record regarding the amount

---

[7] We note that petitioner attempted to claim both depreciation deductions and lease expense deductions on the Rolls Royce.

petitioner spent on gasoline.  We conclude that petitioner has failed to substantiate his car and truck expenses for 1985 and 1986.

C.    Business and Mortgage Interest

Petitioner claimed Schedules C business interest deductions in the amounts of $2,723.27, $3,097.03, and $2,767.96 in 1985, 1986, and 1987, respectively, and Schedules A mortgage interest deductions in the amounts of $4,380.20, $6,053.76, $5,066.02, and $4,949.78 in 1985, 1986, 1987, and 1988, respectively. Respondent allowed petitioner business interest deductions in the amounts of $1,861.27, $2,749.03, and $2,419.96 in 1985, 1986, and 1987, respectively, and mortgage interest deductions in the amounts of $4,287.20, $4,286.76, $4,663.02, and $3,804.78 in 1985, 1986, 1987, and 1988, respectively.  Respondent argues that petitioner has failed to substantiate deductions in amounts greater than those allowed; petitioner claims that he has substantiated his claimed deductions.

Section 163(a) allows a deduction for all interest paid or accrued within the taxable year on indebtedness.  Petitioner submitted customer records of a loan drawn from the Ohio Savings Association.  There is no evidence of what kind of loan this was; i.e., whether it related to business or nonbusiness interest. The records petitioner submitted showed the following amounts of interest paid by petitioner:

| Date | Amount of Interest |
|------|-------------------|
| 1/11/85 | $449.90 |
| 12/12/85 | 362.65 |
| 12/8/86 | 310.19 |
| 11/21/87 | 294.77 |
| 12/8/87 | 291.65 |
| 1/15/88 | 291.21 |
| 3/2/88 | 299.27 |

Petitioner also submitted checks for payments to Ohio Savings on or about some of those dates. Based on the evidence, we conclude that petitioner has failed to substantiate business or mortgage interest deductions in amounts greater than those allowed by respondent; therefore, we sustain respondent's determination on these issues.

D.   General Sales Tax on Motor Vehicles

On his 1986 tax return, petitioner claimed a Schedule A general sales tax on motor vehicles deduction of $6,597.10. Respondent disallowed these deductions. Respondent argues that petitioner has failed to substantiate the deduction; petitioner claims that he has substantiated his claimed deductions.

In 1986, section 164(a)(4) allowed a deduction for State and local general sales taxes. Petitioner submitted a lease agreement executed between himself and Crestmont Cadillac Corp. on December 30, 1986, for the Rolls Royce. Under the lease, petitioner's monthly payment was $1,219.86, of which $63.59 was separately stated as sales tax. Petitioner submitted a check dated December 26, 1986, for $1,219.86 payable to Crestmont

Cadillac.  We conclude that petitioner has substantiated that he paid $63.59 in sales tax on a motor vehicle in 1986 and is entitled to a deduction in this amount.

E.    Partnership Losses

During 1985, 1986, and 1987, petitioner was a 25-percent partner in a real estate partnership called Horizon Partners. Petitioner, on his 1985, 1986, and 1987 tax returns, claimed loss deductions from Horizon Partners in the amounts of $5,191.33, $4,171.25, and $3,876.25, respectively.  Respondent argues that petitioner has not established his adjusted basis in Horizon Partners during the years in issue and therefore is not entitled to deduct any partnership losses.  Petitioner argues that he has established his basis in Horizon Partners.

Section 704(d) allows a partner's distributive share of partnership loss as a deduction only to the extent of the adjusted basis in his partnership interest at the end of the partnership year in which the loss is incurred.  Petitioner testified that in 1983 he invested $6,600 in Horizon Partners. There is, however, no evidence of the amount of his adjusted basis during the years in issue or of the adjustments he made to his basis in previous years.  Petitioner did not demonstrate that he is entitled to deduct his proportionate share of partnership losses from Horizon Partners in 1985, 1986, or 1987.  We

conclude, therefore, that petitioner is not entitled to deductions for partnership losses in 1985, 1986, or 1987.

Investment Income Credit

Petitioner claimed a $1,000 investment tax credit on his 1985 tax return for the Chrysler. Respondent disallowed the credit. Respondent argues that the Chrysler was not a "qualified investment"; petitioner contends that it was.

In 1985, sections 38(a) and 46(a) allowed an investment tax credit to a taxpayer making a "qualified investment". A "qualified investment" must be section 38 property. Sec. 46(c). Section 38 property is limited to certain property with respect to which depreciation or amortization is allowable. Sec. 48(a); sec. 1.48-1(a), Income Tax Regs. As observed above, petitioner is not entitled to depreciate the Chrysler. Moreover, because petitioner has not adduced, and we are not aware of, any authority providing that the expenditure at issue is amortizable, we conclude it is not. See Mann v. Commissioner, T.C. Memo. 1993-201. Accordingly, we conclude that petitioner is not entitled to an investment tax credit in 1985.

Dependency Exemption

On his 1986 tax return, petitioner claimed a dependency exemption for Anupam. Respondent disallowed the exemption. Respondent argues that petitioner did not prove that he provided

over one-half of Anupam's support in 1986; petitioner asserts that he did provide over one-half of Anupam's support.

In 1986, section 151(c)(1) allowed a dependency exemption for each dependent whose gross income for the calendar year was less than the exemption amount or who was a qualifying child of the taxpayer. Section 152(a) defines "dependents" as certain individuals over one-half of whose support was received from the taxpayer during the calendar year.

In order for petitioner to establish that he provided more than one-half of his claimed dependent's support, he must first show by competent evidence the total amount of support furnished by all sources for the year in issue. Blanco v. Commissioner, 56 T.C. 512, 514 (1971). Petitioner has not offered evidence of the total amount of support provided Anupam in 1986. Without proper substantiation, the Court cannot conclude from the record that more than one-half of Anupam's support was provided by petitioner. It is therefore impossible to conclude that petitioner provided more than one-half of Anupam's support for 1986. Accordingly, we sustain respondent's determination.[8]

Self-Employment Tax

Respondent argues that petitioner had additional self-employment income in 1986 and 1987 based on petitioner's

---

[8] We note that petitioner testified, and argued, that Anupam was both petitioner's brother and his cousin.

unreported income from his medical practice plus the disallowed Schedules C deductions. Petitioner argues that he paid the maximum amount of Social Security tax, and no amount is due.

Section 1401 imposes self-employment tax on self-employment income. Section 1402 defines net earnings from self-employment as the gross income derived by an individual from the carrying on of any trade or business by such individual less allowable deductions attributable to such trade or business.

We agree with respondent. We conclude that petitioner is liable for additional self-employment tax in 1986 and 1987 in accordance with section 1401 based upon petitioner's additional self-employment income from his unreported income from his medical practice plus the disallowed deductions.

Addition to Tax for Fraud

The addition to tax in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing. McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975).

The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To satisfy the burden of proof, the Commissioner must show: (1) An underpayment exists; and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The Commissioner must meet this burden through affirmative evidence because fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970).

For 1985, if any part of the underpayment is due to fraud, section 6653(b)(1) imposes an addition to tax equal to 50 percent of the underpayment, and section 6653(b)(2) imposes a separate addition to tax, equal to 50 percent of the interest payable under section 6601, determined on the portion of the underpayment attributable to fraud. For 1986 and 1987, if any part of the underpayment is due to fraud, section 6653(b)(1)(A) imposes an addition to tax equal to 75 percent of the portion of the underpayment attributable to fraud, and section 6653(b)(1)(B) imposes a separate addition to tax, equal to 50 percent of the interest payable under section 6601, determined on the portion of the underpayment attributable to fraud. For 1988, if any part of the underpayment is due to fraud, section 6653(b)(1) imposes an addition to tax equal to 75 percent of the portion of the

underpayment attributable to fraud.  For 1986, 1987, and 1988, if respondent establishes that any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud and subjected to an addition to tax except with respect to any portion of the underpayment that the taxpayer establishes is not attributable to fraud.  Sec. 6653(b)(2).

A.    Underpayment of Tax

The filing of an amended return reporting additional income is an admission of an underpayment of tax.  See Badaracco v. Commissioner, 464 U.S. 386, 399 (1984).  Petitioner's 1987 amended return is an admission that he underreported, in his original returns, $56,000 of income in 1987.  Additionally, on brief, petitioner concedes that he underreported his income from his Schedules C medical practice by $17,170.91 in 1985 and $44,401.56 in 1986.  Furthermore, respondent has established by clear and convincing evidence an underpayment of tax by petitioner for each of the years in issue.

B.    Fraudulent Intent

The Commissioner must prove that a portion of such underpayment for each taxable year was due to fraud. Professional Servs. v. Commissioner, 79 T.C. 888, 930 (1982). The existence of fraud is a question of fact to be resolved from the entire record.  Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence, and

reasonable inferences may be drawn from the relevant facts. Spies v. United States, 317 U.S. 492, 499 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984).  A taxpayer's entire course of conduct can be indicative of fraud.  Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969).  The sophistication, education, and intelligence of the taxpayer are relevant to determining fraudulent intent.  See Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Stephenson v. Commissioner, supra at 1006; Iley v. Commissioner, 19 T.C. 631, 635 (1952).

Over the years, courts have developed a nonexclusive list of factors that demonstrate fraudulent intent.  These badges of fraud include:  (1) Understating income, (2) maintaining inadequate records, (3) implausible or inconsistent explanations of behavior, (4) concealment of income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) an intent to mislead which may be inferred from a pattern of conduct, (8) lack of credibility of the taxpayer's testimony, (9) filing false documents, (10) failing to file tax returns, and (11) dealing in cash.  See Spies v. United States, supra at 499; Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  Although no single factor is necessarily

sufficient to establish fraud, the combination of a number of factors constitutes persuasive evidence. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), affg. per curiam T.C. Memo. 1982-603. We note that some conduct and evidence can be classified under more than one factor.

### 1. Petitioner's Sophistication and Experience

Petitioner is a medical doctor. We shall not hold petitioner to either a high or low standard while evaluating his actions.

### 2. Consistent and Substantial Understatements of Income

The mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172. Consistent and substantial understatements of income, however, may be strong evidence of fraud when coupled with other circumstances. Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). A pattern of consistent underreporting of income, when accompanied by other circumstances indicating an intent to conceal income, may justify the inference of fraud. Holland v. United States, 348 U.S. at 139. Petitioner's understatements during the years in issue are consistent and substantial; they are evidence of fraud.

### 3. Failure To Maintain Adequate Books and Records

Failure to maintain adequate books and records may be indicative of fraud.  <u>Truesdell v. Commissioner</u>, 89 T.C. 1280, 1302 (1987); <u>Gajewski v. Commissioner</u>, 67 T.C. at 200.  As we found earlier, petitioner failed to maintain adequate books and records.  This is evidence of fraud.

    4.   <u>Intent To Mislead</u>

Misleading statements to an investigating agent may be evidence of fraud.  See <u>Gajewski v. Commissioner</u>, <u>supra</u> at 200.  Petitioner misled Ms. Lippert--he told her that he deposited all medical receipts in one bank account when in fact he deposited medical receipts into at least seven accounts (including his own personal accounts).  Petitioner also misled Mr. Dever--petitioner told Mr. Dever that he reported all items deposited into his bank accounts on his tax returns, but he later admitted that he did not report some of these items.  This is evidence of fraud.

    5.   <u>Lack of Credibility</u>

Petitioner's lack of credibility is a factor in considering the fraud issue.  See <u>Toussaint v. Commissioner</u>, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25.  As we stated earlier, petitioner's testimony was at times questionable, vague, conclusory, not credible, and unsupported by the evidence in the record.  This is evidence of fraud.

    6.   <u>Filing False Documents (The Criminal Tax Conviction)</u>

Although not dispositive, petitioner's convictions under section 7206(1) are probative evidence that he intended to evade his taxes.  See Wright v. Commissioner, 84 T.C. 636, 643-644 (1985).

### 7.  Other Factors

A taxpayer's practice of regularly depositing large portions of his business receipts from his sole proprietorship into his personal bank accounts may be evidence of fraud.  See Farber v. Commissioner, 43 T.C. 407 (1965), supplemented by 44 T.C. 408 (1965).  During the years in issue, petitioner regularly deposited large amounts of receipts from his medical practice (whether it was a sole proprietorship or a corporation) into his personal bank accounts; e.g., the AT #4 account, the AT #9 account, and the Society National Bank account.  Petitioner made these deposits in an attempt to conceal his income.  This is evidence of fraud.

### C.  Conclusion

After reviewing all of the facts and circumstances, we conclude that respondent has clearly and convincingly proven that all of the underpayments of tax resulting from petitioner's unreported medical practice income and rental income for each of the years in issue were due to fraud on the part of petitioner.  Therefore, we sustain respondent's determination that petitioner is liable for additions to tax for fraud pursuant to section 6653(b) for 1985, 1986, 1987, and 1988.

Additions to Tax for Negligence

Respondent determined that petitioner is liable for additions to tax for negligence for 1986 and 1987 pursuant to section 6653(a)(1)(A) and (B) and for 1988 pursuant to section 6653(a)(1).[9]  "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6653(a)(3).  Furthermore, negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Failure by a taxpayer to keep adequate records may justify imposition of the addition to tax for negligence.  See Lysek v. Commissioner, 583 F.2d 1088, 1094 (9th Cir. 1978), affg. T.C. Memo. 1975-293; Crocker v. Commissioner, 92 T.C. 899, 917 (1989).  Failure to maintain adequate records also indicates disregard of the rules or regulations that require a taxpayer to keep permanent records sufficient to establish, inter alia, the taxpayer's gross income and deductions.  See Crocker v. Commissioner, supra at 917. Petitioner has the burden of proving he is not liable for the addition to tax.  Rule 142(a).

---

[9]  Respondent determined the additions to tax for negligence on underpayments attributable to adjustments to income that were not fraudulent; i.e., all the adjustments except for those related to the unreported income.

Petitioner argues that he provided all of his records to the IRS during his audit, fully cooperated with the IRS, and did not disregard any rules or regulations.  Petitioner's alleged cooperation and conclusory statement do not prove that he was not negligent.  As we stated above, petitioner failed to maintain adequate records of his income and expenses.  We conclude that petitioner is liable for the additions to tax for negligence for 1986, 1987, and 1988 as determined by respondent to the extent of any underpayment decided for those years that was not due to fraud.

## Addition to Tax for a Substantial Understatement

Respondent determined that petitioner is liable for additions to tax for substantial understatements for 1985, 1986, 1987, and 1988 pursuant to section 6661.  An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return and is substantial if it exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year, or (2) $5,000.  Sec. 6661(b)(1) and (2)(A).  The understatement is reduced to the extent that the taxpayer has (1) adequately disclosed his or her position or (2) has substantial authority for the tax treatment of an item.  Sec. 6661; sec. 1.6661-6(a), Income Tax Regs.  Petitioner has the burden of proving he is not liable for the addition to tax.  Rule 142(a).

Petitioner's only argument is that he did not understate his taxes in 1985, 1986, 1987, and 1988 and, thus, should not be charged with the substantial understatement addition to tax. Contrary to petitioner's assertions, we found that he did understate his taxes for all of the years in issue. Based on our findings in this case, we conclude that there was a substantial understatement in each of the years in issue, and respondent's determination is sustained to the extent of any underpayment decided for those years.

Period of Limitations

Petitioner argues that the deficiencies and additions to tax are barred by the expiration of the statutory period of limitations because respondent has not proven that petitioner's actions were fraudulent.

In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed at any time. Sec. 6501(c)(1). If the return is fraudulent in any respect, it deprives the taxpayer of the bar of the statutory period of limitations for that year. Lowy v. Commissioner, 288 F.2d 517, 520 (2d Cir. 1961), affg. T.C. Memo. 1960-32; see also Colestock v. Commissioner, 102 T.C. 380, 385 (1994) ("Thus, where fraud is alleged and proven, respondent is free to determine a deficiency with respect to all items for the particular taxable year without regard to the period of limitations.").

We found that petitioner filed fraudulent income tax returns for 1985, 1986, 1987, and 1988; therefore the period of limitations on assessment for each of these years remains open.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.