T.C. Memo. 2013-3

UNITED STATES TAX COURT

TYRONE MORGAN CHERRY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2561-10.                              Filed January 9, 2013.

Tyrone Morgan Cherry, pro se.

Nancy L. Karsh and Michael S. Kramarz, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  By notice of deficiency (notice), respondent determined
deficiencies in petitioner's Federal income tax, additions to tax, and accuracy-related
penalties as follows:

| [*2] Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|---|---|---|---|
| 2003 | $6,143 | $1,965 | $1,229 |
| 2004 | 24,275 | 6,733 | 4,855 |
| 2005 | 6,771 | 1,693 | 1,354 |

The issues for decision are whether petitioner (1) underreported his income, (2) is liable for additions to tax for failure to timely file, and (3) is liable for the accuracy-related penalties.[1]

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

## FINDINGS OF FACT

Background

Petitioner resided in Florida at the time he filed the petition.  He is a cash method taxpayer who makes his return on the basis of a calendar year.

---

[1]The deficiencies also reflect computational adjustments based on the phaseout of itemized deductions under sec. 68(a) for 2003 and 2004 and the phaseout of the personal exemption under sec. 151(d)(3) for 2004, all of which derive from the principal adjustments and are not in dispute.  We expect these computational adjustments to be revised in the Rule 155 computation in accordance with this report.

**[*3]** Designer Gallery is a furniture store in Wellington, Florida. During the years in issue, petitioner was employed there as a sales manager. His duties included selling furniture, receiving payments therefor, and installing furniture purchased in the store in customers' homes.

During the years in issue, petitioner was married to Melina Kampanarou Cherry. Ms. Cherry was unemployed during 2003 and was self-employed as a personal trainer during 2004 and 2005. Ms. Cherry never worked for Designer Gallery or any other furniture store.

On March 24, 2005, petitioner was arrested and charged with grand theft and the fraudulent use of other person's personal identification (credit card) information. He pleaded guilty to those charges and was incarcerated from March 24, 2005, to mid-December 2006. Petitioner's 2005 gain from his credit-card-related criminal activity was $17,863. As part of the plea agreement, petitioner was ordered to make restitution payments in that amount. Petitioner did not make any restitution payments in 2005.

Petitioner's Returns

Petitioner obtained extensions of time to file his 2003, 2004, and 2005 Federal income tax returns until October 15, 2004, 2005, and 2006, respectively.

**[*4]** The Internal Revenue Service (IRS) received those returns on April 17, 2007. On each return, petitioner elected the filing status "Married filing separately".

IRS Investigation

Stanley Lottman is a revenue agent employed by respondent. In March 2005, after he read a newspaper account of petitioner's arrest for theft, he began an investigation of petitioner's Federal income tax compliance. He looked first at petitioner's filing history and discovered that petitioner had not filed a Federal income tax return for 2003. He then contacted the Palm Beach sheriff's office, which provided him with a copy of petitioner's arrest report and with bank records that the office had obtained during its investigation of petitioner. The arrest report showed thefts of items worth approximately $17,000. Working with the bank records that he had obtained, Mr. Lottman identified three bank accounts that he believed were associated with petitioner: (1) a personal checking account at Wachovia Bank, account number ending in 1614 (personal account); (2) a joint checking account of petitioner and Ms. Cherry's at Washington Mutual Bank, account number ending in 8236 (joint account); and (3) a business checking account opened by Ms. Cherry at Wachovia Bank in the name "The Design Gallery", account number ending in 1579 (Design Gallery account). Mr. Lottman obtained additional information from the banks with respect to those accounts.

**[\*5]** <u>Design Gallery Account</u>

The Design Gallery account was opened in September 2003 by Ms. Cherry, who signed the account application as president of "The Design Gallery". She opened the account at the direction of petitioner, who had explained to her that he was partnering with the owner of Designer Gallery, they were doing some extra business, and it would be good for her have a business account in her name in order to build up her credit history. Between September 10, 2003, and March 14, 2005, petitioner (or, on three occasions, Ms. Cherry, on his behalf) deposited 123 checks into the Design Gallery account. Petitioner obtained all of those checks from customers of Designer Gallery, who had given him the checks in payment for furniture or other items purchased from the store. Wachovia Bank issued a debit card associated with the Design Gallery account (Design Gallery debit card). Petitioner had sole possession of the card, and he regularly used it to make purchases for himself. In April 2005, after petitioner was arrested, Ms. Cherry closed the Design Gallery account. She did so at petitioner's direction, and, also at his direction, she used the funds withdrawn from the closed account to pay petitioner's criminal attorney, their home mortgage, and other expenses.

**[\*6]** <u>Respondent's Adjustments</u>

Mr. Lottman continued his investigation of petitioner until and after April 2007 when the IRS received (and filed) petitioner's 2003-05 returns. In part on the basis of his examination of bank records for the personal, joint, and Design Gallery accounts, Mr. Lottman concluded that petitioner had on those returns underreported his income. He believed petitioner to have sufficient dominion and control over the Design Gallery account that he should be considered its owner. He believed that the funds deposited to the account represented petitioner's unreported income. To determine the amounts of income that petitioner had each year deposited into those accounts and not reported, he employed a bank deposits analysis pursuant to which he (1) identified the year's total deposits into each account, (2) determined which of those deposits were taxable and which were not (e.g., transfers between accounts of amounts already taken into account), (3) subtracted from the year's total taxable deposits the gross income petitioner reported on that year's return, and (4) concluded that the difference was unreported gross income. He further determined that, for 2005, petitioner had failed to report the $17,863 that, for that year, petitioner had obtained from his credit-card-related criminal activity.

**[\*7]** Following a review of Mr. Lottman's adjustments to petitioner's 2003-05 income by respondent's Appeals Office, respondent issued the notice, which, among other things, increased petitioner's income by $32,668, $96,854, and $41,310 for 2003, 2004, and 2005, respectively.[2]

OPINION

I.    Unreported Income

Petitioner gained $17,863 in 2005 from his credit-card-related criminal activity that he did not report on his 2005 return.  Petitioner concedes that the $17,863 constitutes gross income, and we agree.  See, e.g., Collins v. Commissioner, 3 F.3d 625 (2d Cir. 1993) (gross income from theft from employer of off-track betting tickets), aff'g T.C. Memo. 1992-478; sec. 61(a).  Since petitioner did not report the $17,863 on his 2005 return, respondent was correct in increasing petitioner's 2005 gross income by that amount.  Petitioner claims that he made restitution in that amount in 2008.  Whether he did or did not, he has failed to show that he is entitled to a deduction for any such payment for 2005.  See Ianniello v. Commissioner, 98 T.C. 165, 174 (1992); Mannette v.

---

[2]Respondent has made certain concessions with respect to the amount of petitioner's 2005 unreported income, which the parties can take into account in the computation to be made pursuant to Rule 155.

[*8] Commissioner, 69 T.C. 990, 992 (1978) (embezzlers generally prohibited from carrying back losses arising from repayment of embezzled funds).

Petitioner does not disagree with certain aspects of respondent's bank deposits analysis. He does not disagree with respondent's determinations of the amounts of the deposits to the personal, joint, and Design Gallery accounts. He argues, however, that he "did not open, control, or have access [to] or dominion [over]" the Design Gallery account and that he did not fail to report any income for any of the years in issue "because he did not receive income from the [Design Gallery] account." He also objects to respondent's classification of three 2004 cash deposits ($2,000, $3,800, and $8,000) into the joint account as taxable deposits. He claims the three deposits were nontaxable loans.

Petitioner was not a credible witness. Ms. Cherry was. On the basis of her testimony, we have found that she opened the Design Gallery account at his direction, that he regularly deposited checks into the account, that he obtained those checks from Designer Gallery's customers, that he had sole possession of the Design Gallery credit card, which he regularly used to make purchases for himself, and that, on liquidation of the account, Ms. Cherry used the proceeds in part to pay his criminal defense expenses and their joint expenses. We believe that petitioner used the money in the Design Gallery account for personal purposes and, by doing

**[*9]** so, demonstrated his dominion and control over the account. For tax purposes, therefore, he must be considered owner of the account. As we put it in <u>Tandon v. Commissioner</u>, T.C. Memo. 1998-66, <u>aff'd without published opinion</u>, 210 F.3d 372 (6th Cir. 2000):

> Unless the nontaxable nature of deposits is established, gross income includes deposits to bank accounts where the taxpayer has dominion and control of the funds. See <u>Commissioner v. Glenshaw Glass Co.</u>, 348 U.S. 426, 431 (1955); <u>Davis v. United States</u>, 226 F.2d 331, 334-335 (6th Cir. 1955); see also <u>Manzoli v. Commissioner</u>, T.C. Memo. 1988-299, affd. 904 F.2d 101 (1st Cir. 1990). The use of money for personal purposes is an indication of dominion and control. <u>Woods v. Commissioner</u>, T.C. Memo. 1989-611, affd. without published opinion 929 F.2d 702 (6th Cir. 1991).

While unexplained bank deposits are ordinarily sufficient evidence of unreported income, <u>Tokarski v. Commissioner</u>, 87 T.C. 74, 77 (1986) ("A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income."), here we have evidence that the Design Gallery account served as the depository of funds that, it appears, petitioner embezzled from his employer, Designer Gallery. Embezzled funds constitute gross income. <u>See James v. United States</u>, 366 U.S. 213 (1961). Petitioner's only defense to respondent's bank deposits analysis imputing to him unreported income from the Design Gallery account is that the Design Gallery account was not his; i.e., he had nothing to do with it. Petitioner's statement is not credible, and, not believing him,

**[\*10]** we find that respondent's bank deposits analysis establishes petitioner's gross income from unexplained deposits into the Design Gallery account.

With respect to respondent's classifying three 2004 cash deposits to the joint account as taxable deposits, petitioner does not contest his receipt of those amounts, claiming only that the amounts deposited were nontaxable proceeds of loans. Petitioner bears the burden of proving that respondent's determinations of income using the bank deposits method are erroneous. See Clayton v. Commissioner, 102 T.C. 632, 645 (1994); Mistlebauer v. Commissioner, T.C. Memo. 2012-186, 2012 WL 2608410, at \*3. Petitioner may satisfy that burden by establishing that the deposits that remain at issue are derived from a nontaxable source. See Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). We reiterate that, in general, we did not find petitioner credible. He produced no documents substantiating his claim that the deposits were the proceeds of loans. Nor did he present testimony from the family or friends from whom the alleged loans originated. Petitioner claims in his brief that he provided "sworn affidavits to the IRS auditing agent in 2007 and again during trial", but the record contains no such affidavits. Petitioner has failed to carry his burden of proving that the deposits at issue were from nontaxable sources, and we sustain respondent's classification of those deposits into the joint account as taxable deposits.

**[*11]** We thus sustain respondent's adjustments increasing petitioner's gross income for each of the years in issue.

II.     Section 6651(a)(1) Additions to Tax

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to file a timely return (determined with regard to any extension of time for filing) unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect.  The amount of the addition is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent.  Id.  The Commissioner bears the burden of production with respect to the liability of any individual for any penalty or addition to tax.  Sec. 7491(c).  His burden is to show that imposition of the penalty or addition to tax is appropriate.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001). If he carries that burden, the taxpayer must come forward with evidence sufficient to persuade us that imposition of the penalty or addition to tax is incorrect (e.g., because of the existence of reasonable cause and the absence of willful neglect). See id. at 447.

After extensions, petitioner's Federal income tax returns for 2003, 2004, and 2005 were due by October 15, 2004, 2005, and 2006, respectively.  The parties

**[*12]** stipulated that respondent received petitioner's returns for all three years on April 17, 2007. Thus, there is sufficient evidence to find, and we do find, that it was appropriate for respondent to impose on petitioner a section 6651(a)(1) addition to tax for untimely filing for each year. To avoid the addition to tax, petitioner must come forward with evidence of reasonable cause and the absence of willful neglect. See Higbee v. Commissioner, 116 T.C. at 447-448.

Petitioner contends that he should not be liable for the additions to tax because he had an "unavoidable absence" because of his incarceration. The mere fact that petitioner was incarcerated at the time his return was due does not constitute reasonable cause for his failure to timely file. See, e.g., Mendes v. Commissioner, 121 T.C. 308, 321 (2003). Nor is the unavailability of records generally reasonable cause for failure to file a timely return. E.g., Thrower v. Commissioner, T.C. Memo. 2003-139, 2003 WL 21107675, at *5.

Petitioner's incarceration began on March 24, 2005. Petitioner was not incarcerated until after the extended due date for his 2003 return. For all years, moreover, petitioner has failed to show that his untimely filing was due to reasonable cause and the absence of willful neglect. We sustain respondent's determination of additions to tax under section 6651(a)(1) for all years.

**[*13]** III.   Section 6662(a) Penalty

Section 6662(a) and (b)(1) provides for an accuracy-related penalty (penalty) of 20% of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations.

Negligence has been defined as a lack of due care or failure to do what a reasonably prudent person would do under like circumstances.  E.g., Hofstetter v. Commissioner, 98 T.C. 695, 704 (1992).  It also "includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return."  Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides that the penalty shall not be imposed with respect to any portion of an underpayment if the taxpayer shows that there was reasonable cause for, and that he acted in good faith with respect to, that portion.

Section 1.6664-4(b)(1), Income Tax Regs., provides:

The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances.  * * *  Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability.  Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of * * * law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer.  * * *

**[*14]** Respondent bears the burden of production with respect to the penalty. See sec. 7491(c). The burden imposed by section 7491(c) is "only to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer." Good v. Commissioner, T.C. Memo. 2008-245, 2008 WL 4756483, at *9. Once that burden is met, petitioner bears the burden of proving that he is entitled to relief under section 6664(c)(1). See Higbee v. Commissioner, 116 T.C. at 446.

By demonstrating petitioner's failure to report as income the funds in the Design Gallery account and the stolen merchandise, respondent has met his burden of production. To avoid the penalty, petitioner must come forward with evidence that he acted with reasonable cause and in good faith.

Petitioner asserts that he did not understate his income because the money in the Design Gallery account and the alleged loans were not income. For the reasons discussed supra, petitioner's argument fails. Petitioner further argues that he acted with reasonable cause and in good faith but was simply unaware that stolen merchandise constitutes income. Petitioner fails to show, however, that he made any effort to comply with the internal revenue laws or to assess his proper tax liability with respect to that item. See sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner has failed to carry his burden of showing that he is entitled to relief

**[*15]** under section 6664(c)(1).  Therefore, we sustain respondent's imposition of section 6662(a) penalties for all years.

IV.    Conclusion

Petitioner is liable for the deficiencies, additions to tax, and penalties as determined herein.

Decision will be entered under

Rule 155.