T.C. Memo. 2015-3

UNITED STATES TAX COURT

STEVEN A. SODIPO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19156-12.                          Filed January 5, 2015.

Steven A. Sodipo, pro se.

<u>William J. Gregg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined deficiencies in, additions under

section 6651(a)(1) and (2)[1] to, and a fraud penalty under section 6663(a) on

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] petitioner's Federal income tax (tax) as follows:

| Year | Deficiency | Additions to tax under secs. 6651(a)(1) | 6651(a)(2) | Penalty under sec. 6663(a) |
|------|-----------|------------------|--------------|----------------|
| 2005 | $34,512 | --- | --- | $25,884 |
| 2006 | 54,666 | $12,299.85 | $13,666.50 | --- |
| 2007 | 33,293 | 7,490.93 | 8,323.25 | --- |

The issues remaining for decision are:

(1)  Does petitioner have certain unreported income for each of his taxable years 2005, 2006, and 2007?  We hold that he does.

(2)  Is petitioner entitled to deduct certain claimed business expenses for each of his taxable years 2005, 2006, and 2007?  We hold that he is not.

(3)  Is petitioner entitled to deduct claimed dependency exemptions for two children for each of his taxable years 2006 and 2007?  We hold that he is not.

(4)  Is petitioner liable for the penalty for fraud under section 6663(a) for his taxable year 2005?  We hold that he is.

(5)  Is petitioner liable for the addition to tax under section 6651(a)(1) for each of his taxable years 2006 and 2007?  We hold that he is.

(6)  Is petitioner liable for the addition to tax under section 6651(a)(2) for each of his taxable years 2006 and 2007?  We hold that he is.

[*3]                           FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner was incarcerated in Pennsylvania at the time he filed the petition. Before his incarceration, and at the time of the trial in this case, petitioner resided in Maryland.

At all relevant times, petitioner, Steven A. Sodipo (Mr. Sodipo), was licensed as a pharmacist in Maryland until his license was revoked in October 2006. On a date not established by the record, Mr. Sodipo became involved in a conspiracy to distribute hydrocodone unlawfully (hydrocodone distribution activities). In October 2006, law enforcement officers arrested Mr. Sodipo because of his hydrocodone distribution activities.

At all relevant times, Mr. Sodipo was the sole stockholder of Newcare Home Health Services, Inc. (Newcare Health), and a stockholder of Newcare Developer & Custom Builders, Inc. (Newcare Developer) (sometimes collectively, Newcare corporations). At all relevant times, Mr. Sodipo was the sole member of Cast, LLC (Cast), a limited liability company.

[*4] At all relevant times, including during the years at issue, Mr. Sodipo, his spouse, Dawnette Sodipo (Ms. Sodipo), Newcare Health, Newcare Developer, and RX Pharmacy Associates maintained in their respective names certain accounts, including the following, at the financial institutions shown:

| Institution | Account No. ending | Account holder |
| --- | --- | --- |
| Bank of America | 3640 | Mr. Sodipo |
| Bank of America | 8309 | Mr. Sodipo |
| APGFCU[1] | 1000 | Ms. Sodipo |
| Susquehanna Bank | 4332 | Mr. Sodipo |
| Harbor Bank | 7959 | RX Pharmacy Associates[2] |
| M & T Bank | 3150 | Newcare Health |
| 1st Mariner Bank | 8296 | Newcare Health |
| Susquehanna Bank | 1189 | Newcare Health |
| Susquehanna Bank | 0652 | Newcare Developer |

[1]APGFCU stands for Aberdeen Proving Ground Federal Credit Union. During 2005, a total of $7,880 in cash was deposited into and $37.05 of dividends was earned on the APGFCU account in question (collectively, APGFCU deposits), or a total of $7,917.05, and a check for $1,400 ($1,400 cashed check) was cashed on that account.

[2]As discussed below, RX Pharmacy Associates was the name of Mr. Sodipo's sole proprietorship.

**[*5]**   At all relevant times, including during the years at issue, Mr. Sodipo had signatory authority over the accounts shown in the table above and had dominion and control over each of those accounts.  For example, Mr. Sodipo signed and cashed a check payable to himself for $10,000 ($10,000 cashed check) drawn on the M & T Bank account with an account number ending 3150 that Newcare Health maintained in its name.

At all relevant times, Newcare Developer and Cast maintained in their respective names accounts at M & T Bank with account numbers ending 0750 and 2270, respectively.  (We shall refer collectively to the accounts with account numbers ending 0750 and 2270 and the accounts shown in the table above as the accounts in question.)

Mr. Sodipo timely filed a tax return for his taxable year 2005 (2005 return) that Felix Afolabi, a certified public accountant and paid tax return preparer, had prepared for him.  Mr. Sodipo reported in his 2005 return "[t]axable interest" of $141.  The only other income that Mr. Sodipo reported in his 2005 return was "[b]usiness income" of $47,349 from two Schedules C, Profit or Loss From Business (Schedule C), that Mr. Sodipo included with his 2005 return.  In one of those schedules, Mr. Sodipo reported "[g]ross receipts or sales" of  $45,000, "[c]ost of goods sold" of $30,322, "[g]ross profit" and "[g]ross income" of

[*6] $14,678, "[t]otal expenses" of $16,775, and a loss of $2,097 from an activity described as "PHARMACEUTICAL SALES" that he conducted under the "[b]usiness name" of "RX PHARMACY ASSOCIATES".

In the second Schedule C (2005 Schedule C-2) that Mr. Sodipo included with his 2005 return, he reported "[g]ross receipts or sales", "[g]ross profit", and "[g]ross income" of $110,000, "[t]otal expenses" of $60,554, and "[n]et profit" of $49,446 from an activity described as "PHARMACY CONSULTANT". The "[t]otal expenses" that Mr. Sodipo claimed in his 2005 Schedule C-2 (2005 Schedule C-2 expenses) consisted of the following:

| Expense | Amount |
| --- | --- |
| Car and truck | $15,222 |
| Depreciation and section 179 | 721 |
| Supplies | 12,628 |
| Taxes and licenses | 315 |
| Travel | 4,000 |
| Deductible meals and entertainment | 600 |
| Other | 27,068 |
| Total | 60,554 |

**[*7]**    Newcare Developer, a C corporation, did not file Form 1120, U.S. Corporation Income Tax Return (corporate tax return), for its taxable year 2005.[2]

Mr. Sodipo did not file a tax return, and did not pay any tax, with respect to each of his taxable years 2006 and 2007.

In 2008, a jury returned convictions (Mr. Sodipo's convictions) of Mr. Sodipo for the following crimes relating to his hydrocodone distribution activities: conspiracy to distribute a controlled substance; aiding and abetting the distribution of a controlled substance; conspiracy to launder a monetary instrument; monetary transactions in criminally derived property; and filing a false tax return in violation of section 7206(1) for his taxable year 2005.  As a result of Mr. Sodipo's convictions, he was required to forfeit certain assets, including the funds in the accounts in question.

Sometime after the jury returned Mr. Sodipo's convictions, respondent began an examination of each of his taxable years 2005, 2006, and 2007.  Respondent's revenue agent (revenue agent) who was assigned to that examination asked Mr. Sodipo to provide her with any books or records that he had maintained

---

[2]The record does not establish whether Newcare Developer filed a corporate tax return for each of its taxable years 2006 and 2007.  Nor does the record establish whether Newcare Health, a C corporation, filed a corporate tax return for each of its taxable years 2005, 2006, and 2007.

[*8] relating to his income and his expenses for each of those years. Mr. Sodipo did not give the revenue agent any such books or records. As a result, the revenue agent decided to use the bank deposits method in order to determine whether Mr. Sodipo has any unreported income for any of the years at issue.

In order to conduct an analysis of Mr. Sodipo's bank accounts (bank deposits analysis) pursuant to the bank deposits method, the revenue agent asked Mr. Sodipo for his bank records. Mr. Sodipo did not comply with that request and did not provide any bank records to the revenue agent. Consequently, the revenue agent issued summonses to the financial institutions in which the accounts in question were maintained and thereby obtained the records for those accounts. The revenue agent also issued a summons to Susquehanna Bank for the records of an account with an account number ending 1973 that Cast maintained in its name. The revenue agent analyzed the accounts in question and that Susquehanna account (collectively, analyzed accounts) when she conducted her bank deposits analysis.

In conducting respondent's bank deposits analysis, the revenue agent attempted to ascertain whether any of the deposits into the analyzed accounts during each of the years at issue is nontaxable because, for example, a deposit had been made as a result of a transfer of funds between two of those accounts. The

**[*9]** revenue agent reduced the total deposits into the analyzed accounts by (1) all deposits made into those accounts during each of the years at issue that she determined to be nontaxable and (2) the income that Mr. Sodipo had reported in his 2005 return.

On several occasions the revenue agent discussed with Mr. Sodipo the bank deposits analysis that she was conducting and offered him the opportunity to show that certain deposits made into the analyzed accounts are nontaxable. Mr. Sodipo failed to establish that any of the deposits made into those accounts is nontaxable.

The results of the bank deposits analysis that the revenue agent conducted were that Mr. Sodipo has the following amount of unreported income for each of the years at issue:

| 2005 | 2006 | 2007 |
|------|------|------|
| $27,160.34 | $135,388.65 | $88,143.13 |

Respondent issued a notice of deficiency (notice) to Mr. Sodipo for his taxable years 2005, 2006, and 2007. In that notice, respondent determined (1) that Mr. Sodipo has unreported income for the years at issue of $88,537, $200,653, and $140,291, respectively, (2) to disallow $47,611 (2005 Schedule C-2 expenses at issue) of the "[t]otal expenses" of $60,554 that Mr. Sodipo had claimed in his 2005 Schedule C-2, (3) that Mr. Sodipo is liable for the fraud penalty under

**[\*10]** section 6663(a) for his taxable year 2005, and (4) that Mr. Sodipo is liable for the additions to tax under section 6651(a)(1) and (2) for each of his taxable years 2006 and 2007.  In making the determinations in the notice that Mr. Sodipo has unreported income for each of the years at issue, respondent relied on the bank deposits analysis that the revenue agent had conducted but made certain modifications to that analysis.[3]

OPINION

Petitioner bears the burden of establishing that the determinations in the notice that remain at issue are erroneous.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and petitioner bears the burden of proving entitlement to any deduction claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  The Code and the regulations thereunder required petitioner to maintain records sufficient to establish the amount of any deduction claimed.  See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

---

[3]Because of certain modifications that respondent made to the revenue agent's bank deposits analysis, the determinations in the notice of the respective amounts of unreported income for Mr. Sodipo's taxable years 2005, 2006, and 2007 are not the same as the conclusions of the revenue agent regarding the respective amounts of unreported income for those years based on the bank deposits analysis that she had conducted.

**[*11]** Before turning to the issues that remain for decision, we shall evaluate the testimony of Mr. Sodipo on which he relies in support of his positions with respect to those issues, the testimony of Ms. Sodipo on which Mr. Sodipo relies in support of one of those issues, and the testimony of the revenue agent on whom respondent relies in support of respondent's positions with respect to certain of those issues.

We found Mr. Sodipo's testimony to be in certain material respects general, conclusory, vague, uncorroborated, self-serving, and/or not credible. We shall not rely on the testimony of Mr. Sodipo to establish his position with respect to each of the issues that remain for decision. We found the brief testimony of Ms. Sodipo to be in certain material respects vague, uncorroborated, serving the interests of Mr. Sodipo, and/or not credible. We shall not rely on the testimony of Ms. Sodipo to establish Mr. Sodipo's position with respect to the issue that remains for decision about which she testified. See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We found the testimony of the revenue agent to be trustworthy. We shall rely on that testimony as we deem appropriate.

We now consider the issues that remain for decision. We address initially whether Mr. Sodipo has unreported income for each of the years at issue that

[*12] respondent determined on the basis of the bank deposits method.[4] The revenue agent asked Mr. Sodipo to provide her with any books or records that he had maintained relating to his income and his expenses for each of those years. Mr. Sodipo did not give the revenue agent any such books or records. As a result, the revenue agent decided, correctly we conclude, to use the bank deposits method in order to determine whether Mr. Sodipo has any unreported income for any of the years at issue. See Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). In conducting the bank deposits analysis, the revenue agent was required to, and did, take into account any nontaxable source of a deposit of which she had knowledge. See Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994). In reconstructing a

---

[4]After issuing the notice, but before trial, respondent conceded that certain unreported income for each of the years at issue that respondent had determined in that notice on the basis of the bank deposits analysis is not income for each of those years. As a result of those concessions, it is respondent's position that Mr. Sodipo has unreported income for his taxable years 2005, 2006, and 2007 of $55,507.80, $159,424.37, and $71,420.48, respectively. We note that we believe respondent made one or more errors in conceding that Mr. Sodipo has unreported income of $71,420.48 for his taxable year 2007. However, since any such error(s) resulted in an amount at issue for that year in Mr. Sodipo's favor, we shall not disturb that amount.

On brief, Mr. Sodipo contests only (1) $55,214.51 of the $55,507.80 of unreported income that respondent now contends he has for his taxable year 2005 and (2) $10,000 of the $159,424.37 of unreported income that respondent now contends he has for his taxable year 2006. Thus, the amounts of unreported income that remain at issue for Mr. Sodipo's taxable years 2005, 2006, 2007, respectively, are $55,214.51, $10,000, and $71,420.48.

[*13] taxpayer's income using the bank deposits method, not only deposits into accounts that the taxpayer maintains in his/her name but also deposits into accounts under the dominion and control of the taxpayer[5] are included.  Chambers v. Commissioner, T.C. Memo. 2011-114, 2011 WL 2135376, at *7.

"A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income."  Tokarski v. Commissioner, 87 T.C. at 77. Mr. Sodipo bears the burden of proving that respondent's determinations of income based on the bank deposits method are erroneous.  See Clayton v. Commissioner, 102 T.C. at 645.  Mr. Sodipo may satisfy that burden by establishing that the deposits that remain at issue are derived from a nontaxable source.  See Nicholas v. Commissioner, 70 T.C. at 1064.

It is Mr. Sodipo's position that respondent was arbitrary in determining his unreported income for each of the years at issue.[6]  In support of his position, Mr. Sodipo argues that it was arbitrary for respondent to include in his income for certain of the years at issue (1) certain deposits made into certain of the accounts in question that one of the Newcare corporations, his spouse, and he maintained in

---

[5]A taxpayer has dominion and control over certain funds if the taxpayer has the freedom to use those funds at will.  Rutkin v. United States, 343 U.S. 130, 137 (1952).

[6]We consider only Mr. Sodipo's positions that he advances on brief.

[*14] their respective names,[7] (2) a check for $1,400 cashed during 2005 that was drawn on the APGFCU account with an account number ending 1000 that Ms. Sodipo maintained in her name, and (3) a check for $10,000 drawn on the M & T Bank account with an account number ending 3150 that Newcare Health maintained in its name, which he wrote, signed, made payable to himself, and cashed. We address below each of those deposits, the $1,400 cashed check, and the

---

[7]The following are the amounts of the deposits into certain accounts at the financial institutions shown that petitioner argues are not includible in his income for his taxable years indicated:

| Year | Institution | Account No. ending | Account holder | Amount |
|------|-------------|--------------------|----------------|--------|
| 2005 | APGFCU | 1000 | Ms. Sodipo | $7,867.05 |
| 2005 | 1st Mariner Bank | 8296 | Newcare Health | 5,900.00 |
| 2005 | M & T Bank | 0750 | Newcare Developer | 40,047.46 |
| 2007 | Susquehanna Bank | 4332 | Mr. Sodipo | 71,420.48 |

Mr. Sodipo also argues that he does not have $1,400 of income for his taxable year 2005 that is attributable to a check for $1,400 cashed during 2005 that was drawn on the APGFCU account with an account number ending 1000 that Ms. Sodipo maintained in her name.

Finally, Mr. Sodipo argues that he does not have $10,000 of income for his taxable year 2006 that is attributable to a check for $10,000 made payable to and signed by him that he cashed during that year and that was drawn on the M & T Bank account with an account number ending 3150 that Newcare Health maintained it its name.

[*15] $10,000 cashed check, which Mr. Sodipo disputes are includible in his income.

With respect to his taxable year 2005, Mr. Sodipo argues that respondent erred in including in his income for that year deposits during that year totaling (1) $5,900 into the 1st Mariner Bank account with an account number ending 8296 that Newcare Health maintained in its name and (2) $40,047.46 into the M & T Bank account with an account number ending 0750 that Newcare Developer maintained in its name (collectively, Newcare deposits). As we understand him, Mr. Sodipo is arguing that the Newcare deposits are not includible in his income because they are income of the respective Newcare corporations in whose names the accounts were maintained. The only evidence that Mr. Sodipo proffered in support of that argument is his own testimony on which we are unwilling to rely. We have found that Mr. Sodipo had signatory authority and dominion and control over the 1st Mariner Bank account with an account number ending 8296 that Newcare Health maintained in its name. Respondent determined in the notice that Mr. Sodipo had signatory authority over the M & T Bank account with an account number ending 0750 that Newcare Developer maintained in its name. Petitioner offered no evidence at trial that establishes error in that determination. On the record before us, we find that petitioner has failed to carry his burden of

**[*16]** establishing that the Newcare deposits are not includible in his income for his taxable year 2005.

With respect to his taxable year 2005, Mr. Sodipo also argues that respondent erred in including in his income for that year (1) a check for $1,400 cashed during 2005 that was drawn on the APGFCU account with an account number ending 1000 that Ms. Sodipo maintained in her name and (2) $7,867.05 consisting of cash deposits during that year into, and dividends credited during that year to, that account.[8] As we understand him, Mr. Sodipo is arguing that the $1,400 cashed check and the APGFCU deposits are not includible in his income even though he had signatory authority over the APGFCU account in question. According to Mr. Sodipo, the deposits into that account "belong" to Ms. Sodipo and are her income. The only evidence that Mr. Sodipo proffered in support of that argument is his own testimony and Ms. Sodipo's testimony on which we are unwilling to rely. We have found that Mr. Sodipo had signatory authority and dominion and control over the APGFCU account with an account number ending 1000 that Ms. Sodipo maintained in her name. On the record before us, we find

[8]Although during Mr. Sodipo's taxable year 2005 he cashed a check for $1,400 drawn on the APCFCU account and a total of $7,880 was deposited into and $37.05 of dividends was earned on that account, or a total of $9,317.05, respondent reduced that total by $50 and determined that only $9,267.05 is includible in Mr. Sodipo's income for that year.

[*17] that Mr. Sodipo has failed to carry his burden of establishing that the $1,400 cashed check and the APGFCU deposits are not includible in his income for his taxable year 2005.

With respect to his taxable year 2006, Mr. Sodipo argues that respondent erred in including in his income for that year a $10,000 check made payable to and signed by him that he cashed and that was drawn on the M & T Bank account with an account number ending 3150 that Newcare Health maintained in its name. As we understand Mr. Sodipo's position, he is claiming that the $10,000 cashed check is not "income, it was the amount given to the board of directors to use for accommodation and travel expenses when petitioner and his other directors travel[ed] to Nigeria in Sept[ember], 2006, to oversee the other company affairs (NEWCARE HEALTH SERVICES, LTD. NIGERIA)" as part of a business trip. The only evidence that Mr. Sodipo proffered in support of that claim is his own testimony on which we are unwilling to rely. On the record before us, we find that petitioner has failed to carry his burden of establishing that the $10,000 cashed check is not includible in his income for his taxable year 2006.

With respect to his taxable year 2007, Mr. Sodipo argues that respondent erred in including in his income for that year deposits during that year totaling $71,420.48 into the Susquehanna Bank account with an account number ending

**[*18]** 4332 that Mr. Sodipo maintained in his name (Susquehanna Bank account 4332 deposits). As we understand Mr. Sodipo's position, he is claiming that those deposits are not includible in his income for his taxable year 2007 because his "only source of income is Newcare Home Health Services, Inc. [which] [s]hut down operation[s] in October 2006." The only evidence that Mr. Sodipo proffered in support of that claim is his own testimony and Ms. Sodipo's testimony on which we are unwilling to rely. In addition to the business that Mr. Sodipo conducted through Newcare Health, he had other businesses that he conducted through other companies, including Cast and Newcare Developer. Moreover, as we understand his testimony, Mr. Sodipo admitted that Newcare Developer was conducting sales operations after Newcare Health ceased its operations in October 2006. On the record before us, we find that petitioner has failed to carry his burden of establishing that the Susquehanna Bank account number 4332 deposits are not includible in his income for his taxable year 2007.

On the record before us, we find that Mr. Sodipo has failed to carry his burden of establishing that he does not have the unreported income that remains at issue for his taxable years 2005, 2006, and 2007, see supra note 4, of $55,214.51, $10,000, and $71,420.48, respectively.

[*19] We turn next to the 2005 Schedule C-2 expenses at issue. As we understand Mr. Sodipo's position, he is claiming that he is entitled for his taxable year 2005 to deduct those expenses under section 162(a) or 167(a).[9] Mr. Sodipo also claims that he is entitled to deduct under one of those sections certain Schedule C-2 expenses for each of his taxable years 2006 and 2007.

Mr. Sodipo did not proffer at trial any documentary evidence in support of his position that he is entitled to deduct all of the 2005 Schedule C-2 expenses at issue and certain Schedule C-2 expenses for each of his taxable years 2006 and 2007. In an effort to explain why he did not do so, Mr. Sodipo contends that the Government seized as part of its investigation of his hydrocodone distribution activities, and did not return, the documents that he argues would have established his entitlement to deduct the claimed Schedule C-2 expenses for each of the years at issue. Assuming arguendo that the Government had seized and did not return any of Mr. Sodipo's records, he would have been allowed, but did not attempt, to

_____

[9]Sec. 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. For certain expenses otherwise deductible under sec. 162(a), such as expenses for travel, meals, and entertainment, see sec. 274(d)(1) and (2), a taxpayer must also satisfy the substantiation requirements set forth in sec. 274(d) before such expenses will be allowed as deductions.

Sec. 167(a) allows a deduction for a reasonable allowance for exhaustion, wear and tear, and obsolescence of property used in a trade or business or held for the production of income.

**[*20]** introduce other reliable evidence into the record to establish his position that he is entitled to deduct the 2005 Schedule C-2 expenses at issue and certain Schedule C-2 expenses for each of his taxable years 2006 and 2007. The unavailability of Mr. Sodipo's records because of the alleged actions of the Government does not excuse him from the requirement that he establish through other reliable evidence his entitlement to deduct those claimed expenses. See Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979).

On the record before us, we find that Mr. Sodipo has failed to carry his burden of establishing that he is entitled to deduct the 2005 Schedule C-2 expenses at issue and certain Schedule C-2 expenses for each of his taxable years 2006 and 2007.

We address next Mr. Sodipo's claim that he is entitled for each of his taxable years 2006 and 2007 to two dependency exemptions for two children (dependency exemptions at issue). In support of that claim, Mr. Sodipo testified in a general and conclusory manner that he had two minor children whom he supported during each of his taxable years 2006 and 2007. We are unwilling to rely on that testimony.

On the record before us, we find that Mr. Sodipo has failed to carry his burden of establishing he is entitled to the dependency exemptions at issue.

[*21] We consider next the fraud penalty under section 6663(a) that respondent determined with respect to Mr. Sodipo's taxable year 2005. Section 6663(a) imposes a penalty equal to 75 percent of the portion of any underpayment that is attributable to fraud. For purposes of section 6663(a), if the Commissioner of Internal Revenue (Commissioner) establishes that any portion of an underpayment is attributable to fraud, the entire underpayment is to be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes by a preponderance of the evidence is not attributable to fraud. Sec. 6663(b). In order for the fraud penalty to apply, the Commissioner must prove by clear and convincing evidence, sec. 7454(a); Rule 142(b), that an underpayment exists and that some portion of that underpayment is attributable to fraud, e.g., Niedringhaus v. Commissioner, 99 T.C. 202, 210 (1992).

To prove the existence of an underpayment, the Commissioner may not rely on a taxpayer's failure to carry his or her burden of proof with respect to the underlying deficiency. E.g., Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The Commissioner must prove only that an underpayment exists, and not the precise amount of the underpayment. E.g., DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). When an allegation of fraud is intertwined with reconstructed unreported income, as it is in the present case, the

[*22] Commissioner may satisfy the burden of establishing an underpayment by (1) proving a likely source of the unreported income or (2) disproving the nontaxable source(s) that the taxpayer alleges for the unreported income. Parks v. Commissioner, 94 T.C. at 661.

On the record before us, we find that respondent has established by clear and convincing evidence a likely source of Mr. Sodipo's unreported income for his taxable year 2005, namely, Mr. Sodipo's work as a pharmacist. On that record, we find that respondent has established by clear and convincing evidence that there was an underpayment of tax for Mr. Sodipo's taxable year 2005.

In order to prove fraudulent intent, the Commissioner must prove by clear and convincing evidence that the taxpayer intended to evade tax, which the taxpayer believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. E.g., id. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. E.g., DiLeo v. Commissioner, 96 T.C. at 874. Fraud is never presumed or imputed and should not be found in circumstances which create at most only a suspicion. E.g., Petzoldt v. Commissioner, 92 T.C. 661, 699-700 (1989). Direct evidence of the requisite fraudulent intent is seldom available. E.g., id. Consequently, respondent

**[*23]** may prove fraud by circumstantial evidence. E.g., Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

The courts have identified a number of so-called badges of fraud from which fraudulent intent may be inferred, including (1) the understatement of income, (2) the failure to maintain adequate records as required by the Code and the regulations, (3) providing incomplete or erroneous information to a tax return preparer or bookkeeper, (4) dealing in cash, (5) acts designed to conceal income, and (6) engaging in illegal activity. See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; Ruark v. Commissioner, 449 F.2d 311, 312-313 (9th Cir. 1971), aff'g per curiam T.C. Memo. 1969-48; Niedringhaus v. Commissioner, 99 T.C. at 211. In addition, a conviction under section 7206(1) is a badge of fraud. See Morse v. Commissioner, T.C. Memo. 2003-332, 2003 WL 22853796, at *5, aff'd, 419 F.3d 829 (8th Cir. 2005). Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia constitutes persuasive circumstantial evidence of fraud. E.g., Petzoldt v. Commissioner, 92 T.C. at 700.

The record establishes that petitioner (1) committed certain crimes relating to his hydrocodone distribution activities for which he was convicted; (2) attempted to conceal his illegal activities, as evidenced by his conviction for

[*24] conspiracy to launder a monetary instrument; (3) understated his income for his taxable year 2005, and (4) was convicted of filing a false tax return in violation of section 7206(1) for his taxable year 2005.

On the record before us, we find that respondent has established by clear and convincing evidence that petitioner intended to evade tax for his taxable year 2005, which he believed to be owing, by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax. On that record, we find that Mr. Sodipo is liable for his taxable year 2005 for the fraud penalty under section 6663(a).

We turn finally to the additions to tax under section 6651(a)(1) and (2) that respondent determined for each of Mr. Sodipo's taxable years 2006 and 2007. Those respective additions to tax under section 6651(a)(1) and (2) do not apply if the respective failures to file and to pay are due to reasonable cause, and not willful neglect. See sec. 6651(a)(1) and (2).

Respondent bears the burden of production with respect to those additions to tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose" the additions to tax at issue. See Higbee v. Commissioner, 116 T.C. at 446. Although respondent

[*25] bears the burden of production with respect to those additions to tax, respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * [T]he taxpayer bears the burden of proof with regard to those issues." See id.

Mr. Sodipo did not file a tax return, and did not pay any tax, with respect to each of his taxable years 2006 and 2007. On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c).

With respect to his failure to file a tax return for each of his taxable years 2006 and 2007, it is Mr. Sodipo's position that that failure to file for each of those years was due to reasonable cause, and not due to willful neglect. In support of that position, Mr. Sodipo asserts that "all the documents needed were seized by the [G]overnment and * * * there was a restraining order on the accountant not to talk to the petitioner." Even if the Government had seized Mr. Sodipo's records, the mere unavailability of records is not reasonable cause for failing to file a tax return. See Thrower v. Commissioner, T.C. Memo. 2003-139, 2003 WL 21107675, at *5.

On the record before us, we find that Mr. Sodipo has failed to carry his burden of establishing that his failure to file a tax return for each of his taxable years 2006 and 2007 was due to reasonable cause, and not due to willful neglect.

**[*26]** With respect to his failure to pay tax for each of his taxable years 2006 and 2007, as we understand Mr. Sodipo's position, he argues that that failure to pay was the result of his inability, for the reasons discussed above, to file a tax return for each of those years. Even if we had accepted Mr. Sodipo's argument concerning his failure to file, he would not have been excused from paying his tax for each of his taxable years 2006 and 2007. See Wright v. Commissioner, T.C. Memo. 2013-129, 2013 WL 2156554, at *6.

On the record before us, we find that Mr. Sodipo has failed to carry his burden of establishing that his failure to pay his tax for each of his taxable years 2006 and 2007 was due to reasonable cause, and not due to willful neglect.

On the record before us, we find that Mr. Sodipo has failed to carry his burden of establishing that he is not liable for each of his taxable years 2006 and 2007 for the additions to tax under section 6651(a)(1) and (2).

We have considered all of the parties' respective contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and the concessions of the parties,

Decision will be entered under

Rule 155.